### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF LOUISIANA
### MONROE DIVISION

| | |
|---|---|
| **LANFORD ANTHONY PAYNE** | **CIVIL ACTION NO. 3:15-cv-2747** |
| **aka LANDFORD ANTHONY PAYNE** | |
| **LA. DOC #258107** | |
| **VS.** | **SECTION P** |
| | **JUDGE ROBERT G. JAMES** |
| **WARDEN BURL CAIN** | **MAGISTRATE JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

Pro se petitioner Lanford Anthony Payne, a prisoner in the custody of Louisiana's

Department of Corrections, filed the instant petition for writ of habeas corpus pursuant to 28

U.S.C. §2254 on November 24, 2015. [doc. # 1]. Petitioner attacks his 2011 conviction for

attempted second degree murder, possession of a firearm by a convicted felon, and attempted

armed robbery and the sentences totaling 100 years imposed thereon by the Fourth Judicial

District Court, Ouachita Parish. This matter has been referred to the undersigned for review,

report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the

standing orders of the Court.

### Background

The underlying facts in this case have been set forth by the Louisiana Second Circuit

Court of Appeal as follows:

> The first incident involving the defendant occurred on June 15, 2010. According
> to the testimony of Jason Weeks, he was sitting on the porch of a house on Short
> Washington Street in Monroe, waiting for a friend to return when a vehicle
> stopped in front of the house. The defendant exited the vehicle and approached
> Weeks demanding drugs or money. When Weeks refused, defendant pointed a
> handgun at him and again demanded money. Weeks gave defendant some of his
> money, but refused the demand for more. The defendant, who was standing three
> feet away, then fired multiple shots at Weeks. After being shot, Weeks ran out of
> the house to a nearby convenience store, where he collapsed on the floor. Police

responded to the scene and Weeks was taken to the hospital for treatment of gunshot wounds to his chest, arm and back. While he was recovering in the hospital, Weeks saw defendant's photograph on a news report about his arrest for a shooting that occurred near the location where Weeks had been shot. Weeks recognized the defendant as the person who had shot him and contacted the police with this information.

Regarding the second shooting incident, the trial testimony showed that on July 1, 2010, Jerry Lee Greer was with a group of friends at a house on Adams Street in Monroe. At approximately 5:45 p.m., the defendant rode up to the residence on a bicycle and called to Greer, who had previously met defendant. They were standing near the side of the house when the defendant pulled a gun and demanded Greer's money. The defendant said, "I've got to have it," asked if Greer was willing to die and then said, "I'm going to ask you one more time." Before Greer could react, the defendant shot him one time. After the victim fell to the ground, defendant went through his pockets and then rode away on his bicycle. Another neighbor heard the gunshot, saw defendant holding a black handgun and telephoned the police while following the defendant as he fled the scene. The witness kept the defendant in sight and was able to direct officers to the defendant's location. When the defendant was arrested, he was in possession of a handgun and was carrying $5.00 on his person. The detective working the case took statements from three individuals who actually saw defendant fire the gun. There were seven others who heard the shot or saw the defendant with a gun in his hand prior to the shooting. The handgun in defendant's possession when he was arrested was determined to be the weapon that fired the cartridge casings found at the scenes of both shootings.

With regard to each shooting incident, the defendant was charged with armed robbery with a firearm, attempted second degree murder and possession of a firearm by a convicted felon, for a total of six counts. The jury acquitted defendant of the armed robbery of Weeks, but found him guilty of two counts of attempted second degree murder, the attempted armed robbery of Greer and two counts of possession of a firearm by a convicted felon. After a hearing, the trial court adjudicated the defendant a second-felony offender. As for the offenses committed on June 15, 2010, the trial court sentenced defendant to serve 50 years without benefit for attempted second degree murder and 20 years without benefit for possession of a firearm by a convicted felon, with these sentences to run concurrently. Regarding the offenses of July 1, 2010, the trial court sentenced defendant to serve 50 years without benefit for attempted second degree murder, 20 years without benefit for possession of a firearm by a convicted felon and 20 years without benefit for attempted armed robbery, with an additional 5 years for use of a firearm. These sentences were ordered to run concurrently with each other, but consecutively to the concurrent sentences imposed for the June 2010 offenses. Additionally, the defendant was ordered to pay a fine of $1,000 for each

count of possession of a firearm by a convicted felon, and $500 in restitution to the victim of the attempted armed robbery, or in default thereof, serve an additional 180 days.

*State of Louisiana v. Landford Anthony Payne*, 47,481 (La. App. 2 Cir. 12/12/2012), 108 So.3d 174.

He appealed his conviction and sentences. *Id.* His court-appointed appellate counsel argued a single assignment of error, excessiveness of sentence. *Id.* at 178. Petitioner submitted a pro se appeal brief in which he argued the following claims: (1)  that his right to confront witnesses was denied when he was not allowed to question Melvin Newton at trial and the custodian of records at the multiple offender hearing; (2) ineffective assistance of appellate counsel for failing to claim ineffective assistance of trial counsel on appeal. *Id.* at 180. The appeals court noted patent error and affirmed all convictions and the sentences imposed for attempted murder. *Id.* at 183. However, the Court vacated the sentences for possession of a firearm by a convicted felon and attempted armed robbery and remanded for re-sentencing. *Id*.

On some unspecified date petitioner applied for writs of certiorari in the Louisiana Supreme Court. On June 14, 2013, his writ application was denied without comments. *State of Louisiana v. Lanford Anthony Payne*, 2013-0065 (La. 6/14/2013), 118 So.3d 1080. On some unspecified date he applied for reconsideration and on October 4, 2013, reconsideration was denied without comment. *State of Louisiana v. Lanford Anthony Payne*, 2013-0065, 122 So.3d 548. He did not apply for certiorari in the United States Supreme Court. [doc. # 1, ¶9(h)].

On April 22, 2014, he filed an application for post-conviction relief in the Fourth Judicial District Court arguing claims of ineffective assistance of counsel, perjury by a state's witness, prosecutorial misconduct, violation of his right to confrontation at trial and at the habitual

offender hearing. On June 18, 2014, his application was denied. [doc. # 1, ¶11]. His writ

application was assigned Docket Number KH 14-49673 and was denied by the Second Circuit

Court of Appeals on September 25, 2014. [doc. # 1, ¶12]. His writ application was denied

without comment on September 18, 2015. *State of Louisiana ex rel. Landford Anthony Payne v.*

*State of Louisiana*, 2014-2321 (La. 9/18/2015), — So.3d —, 2015 WL 5885280.

Petitioner filed the instant petition on November 24, 2015. He argues the following

claims: 1) ineffective assistance of appellate counsel; 2) violation of his right to confrontation at

the trial; 3) violation of his right to confrontation at the habitual offender hearing; 4) ineffective

assistance of trial counsel; 5) perjury by witness Weeks; and 6) prosecutorial misconduct. [Doc.

1-1]. The matter is now before the Court.

## Law and Analysis

## I.      Standard of Review – 28 U.S.C. § 2254

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. §

2254, governs *habeas corpus* relief. The AEDPA limits how a federal court may consider *habeas*

claims. After the state courts have "adjudicated the merits" of an inmate's complaints, federal

review "is limited to the record that was before the state court[.]" *Cullen v. Pinholster*, 131 S. Ct.

1388, 1398 (2011). An inmate must show that the adjudication of the claim in state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a

conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the

state court decides a case differently than [the Supreme Court] has on a set of materially

indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting

*Williams v. Taylor*, 529 U.S. 362 (2000)). "The 'contrary to' requirement refers to holdings, as

opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-

court decision." *Id.* at 740. Under the "unreasonable application" clause, a federal *habeas* court

may grant the writ only if the state court "identifies the correct governing legal principle from . .

. [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the

prisoner's case." *Id.* at 741.

　　　　Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal

courts presume such determinations to be correct; however, a petitioner can rebut this

presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## II.　　Petitioner's Claims

## A.　　Claim One: Violation of Confrontation Clause at Trial

　　　　Petitioner argues that the trial court erred in allowing Officer Mark Johnson to testify

during the trial regarding the substance of a statement given by witness Mr. Melvin Newton.

[doc. # 1-1, p. 9]. Petitioner contends that such testimony was inadmissible hearsay and thus

violated Payne's rights under the Sixth Amendment's Confrontation Clause. *Id.* "Under the Sixth

Amendment, a criminal defendant has the right 'to be confronted with the witnesses against

him.'" *Taylor v. Cain*, 545 F.3d 327, 335 (5th Cir. 2008) (citation omitted). "The Confrontation

Clause generally bars witnesses from reporting the out-of-court statements of nontestifying

declarants." *Id.* During the Defense's cross-examination of Officer Johnson the following

5

testimony was elicited and is the subject of Payne's claim:

> Q: Who called this incident in to Monroe PD?
>
> A: The caller who followed the suspect, Mr. Payne was identified to us as Mr.
>
> Melvin Newton.
>
> Q: Was there a call from any other eyewitness?
>
> A: No, ma'am. If there was I don't know about it. This is the one that gave me the
>
> statement and relayed these facts to me.
>
> Q: Did your investigation lead you to believe that Mr. Newton saw Mr. Payne?
>
> A: Correct. Mr. Newton gave me a recorded audio statement stating that he saw
>
> Mr. Payne holding a handgun on Adam Street and heard a shot.
>
> Q: Was it Mr. Newton that followed Mr. Payne in the car?
>
> A: That was the statement that was given to me.
>
> Q: Did he say that he ever lost sight of Mr. Payne?
>
> A: He stated he did not. He stated he kept him in sight and directed the police the
>
> entire time on DeSiard Street until they got to the bridge at which time the police
>
> made contact with him at the bridge.

[(Trial Court transcript) doc. # 10-7, p. 122].

Rulings regarding the admissibility of evidence under state law are not reviewable in habeas proceedings unless the rulings "were so extreme as to result in a denial of a constitutionally fair proceeding." *Jackson v. Johnson*, 194 F.3d 641, 656 (5th Cir. 1999). In this case, the undersigned finds that the admission of Officer Johnson's testimony regarding Mr. Newton's statement constituted a Confrontation Clause violation and, therefore, that the trial

court's failure to so find was an unreasonable application of federal law. As the Fifth Circuit has

stated:

> Police officers cannot, through their trial testimony, refer to the substance of
> statements given to them by nontestifying witnesses in the course of their
> investigation, when those statements inculpate the defendant. When the statement
> from an out-of-court witness is offered for its truth, constitutional error can arise.
> This principle is well established.

*Taylor*, 545 F.3d at 335. Based on this authority, it is apparent that Officer Johnson's testimony

was hearsay and that its admission deprived Payne of his right to confront witnesses against him.

Officer Johnson testified as to the substance of an out-of-court statement made by Mr.

Melvin Newton. Mr. Newton did not testify at trial and Payne was not provided the opportunity

to cross-examine him. Moreover, this information substantially incriminated Payne in the crime

for which he was on trial. Therefore, not only was this testimony hearsay, but its admission

violated Payne's rights under the Confrontation clause.

The State asserts that Mr. Newton's statements were not the subject of the testimony

given in open court. [doc. # 10, p. 14]. The State contends that Officer Johnson merely

mentioned how Petitioner was apprehended during the investigation. *Id.*  The Louisiana Second

Circuit Court of Appeal stated that "Newton's recorded statement was not admitted at trial and

so did not involve his right to confront witnesses." *State of Louisiana*, 108 So.3d at 180. While it

is clear that "[t]he Confrontation Clause does not bar the use of testimonial statements for

purposes other than establishing the truth of the matter asserted," *United States v. Flores*, 286

Fed. Appx. 206, *6 (5th Cir. August 7, 2008) (citation omitted), there is no clear indication from

the trial transcript that Officer Johnson's testimony was intended only for that purpose.

Therefore, based on the foregoing discussion, the admission of Officer Johnson's

testimony constituted a Confrontation Clause violation. This finding, however, does not end the inquiry in this case, for if the error was harmless, Payne is not entitled to relief. "On habeas review under the AEDPA, the prejudice of constitutional error in a state-court criminal trial is measured by the 'substantial and injurious effect' standard." *Taylor*, 545 F.3d at 336. Under this standard, the admission of Officer Johnson's testimony will entitle Payne to relief only if it had a "substantial and injurious effect or influence in determining the jury's verdict." *Id.* (citation omitted). "When a court finds itself 'in virtual equipoise as to the harmlessness of the error . . . , the court should treat the error as if it affected the verdict." *Id.* (citation omitted). However, if the evidence of the defendant's guilt is overwhelming, reversal is not required. *Id.*

In conducting this analysis, courts consider: (1) the importance of the testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony; and (4) the overall strength of the prosecution's case against the defendant. *Cupit v. Whitley*, 28 F.3d 532, 539 (5th Cir.1994). Of these factors, "the strength of the prosecution's case is probably the single most important factor in determining whether the error was harmless." *Id.*

In this case, the undersigned finds that the error of admitting Officer Johnson's testimony was harmless. Notwithstanding his testimony regarding Mr. Newton's statement, Officer Johnson testified that Payne had a .380 weapon on him when police first made contact with Payne. [doc. # 10-6, p. 109]. Officer Johnson testified that he had recovered a .380 shell casing from the scene during the course of the investigation and that Payne admitted he knew he was wrong for possessing the weapon because he was a convicted felon. *Id.* at 120. Additionally, Officer Johnson testified that, "[t]here were seven different people at some point during this

thing who identified Mr. Payne as the person with the handgun in contact with Mr. Greer on

Adam Street. [Mr. Newton, Mr. Higgins and Mr. Mickens] specifically saw Mr. Payne shoot

him." *Id.* at 123.

Given this evidence, the undersigned cannot say that Officer Johnson's testimony

regarding Mr. Newton's statements had a substantial or injurious effect on the jury's verdict.

Due to the overwhelming weight of the evidence and strength of the prosecution's case, the error

in admitting Officer Johnson's testimony regarding Mr. Newton's statements was harmless.

Accordingly, Payne is not entitled to habeas relief, and it is recommended that his motion on this

ground be DENIED.

**B.**     **Claim Two: Ineffective Assistance of Appellate Counsel**

Payne's next claim asserts ineffective assistance on the part of his appellate counsel for

only raising a frivolous excessive sentence claim and failing to raise a Confrontation Clause

violation. [doc. # 1-1, p. 6].

The *Strickland* standard for ineffective assistance of trial counsel also applies to claims of

ineffective assistance of appellate counsel. *See Smith v. Robbins*, 528 U.S. 259, 764, 120 S. Ct.

746, 145 L. Ed. 2d 756 (2000) (explaining that *Strickland* provides standards for evaluating

appellate counsel). To prevail on a claim of ineffective assistance of counsel, a defendant must

show both (1) that his counsel's actions fell below an objective standard of reasonableness and

(2) that the ineffectiveness of counsel prejudiced him. *Strickland v. Washington*, 466 U.S. 668,

686–87 (1984).

To demonstrate deficiency on the part of appellate counsel, a petitioner must show that

counsel "fail[ed] to find arguable issues to appeal—that is, that counsel unreasonably failed to

discover nonfrivolous issues and to file a merits brief raising them." *Smith*, 528 U.S. at 286.

Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may

select among them in order to maximize the likelihood of success on appeal." *Id.* at 288. Thus, it

is possible that an ineffectiveness claim may be "based on counsel's failure to raise a particular

claim, but it is difficult to demonstrate that counsel was incompetent." *Id.* (citing Gray v. Greer,

800 F.2d 644, 646 (7th Cir. 1986)). Additionally, appellate counsel's failure to raise particular

issues on appeal does not deprive an appellant of effective assistance of counsel when the

petitioner does not show the existence of any trial errors with arguable merit. *Hooks v. Roberts*,

480 F.2d 1196, 1198 (5th Cir. 1973).

Under the second *Strickland* prerequisite, appellate counsel becomes ineffective only

when counsel's errors are prejudicial, that is, when there is a reasonable probability that, but for

the error, the ultimate result would have been different. To demonstrate prejudice, a petitioner

must show that, but for appellate counsel's deficient performance, he would have prevailed on

appeal. *Smith*, 528 U.S. at 286.

Payne's claim of ineffective assistance of appellate counsel fail because he does not and

cannot show prejudice, or a reasonable probability the outcome would have been different, as

required by *Strickland*. For the reasons discussed in Section II.A., the outcome of the proceeding

would not have been different as a result of appellate counsel bringing a claim that Payne's

rights were violated under the Confrontation Clause. As explained above, introduction of Mr.

Newton's statements, in violation of the Confrontation Clause, was harmless error.

Notwithstanding Payne's claim to the contrary, the proof of his guilt was overwhelming. The

improperly introduced testimony, when weighed against all of the other compelling,

corroborating, and incriminating evidence that was presented to the jury, did not have a

substantial and injurious effect or influence in determining the jury's verdict.

Payne had to show that, but for counsel's error, the result of the trial would have been

different. For the reasons discussed in Section II.A., Payne cannot make this showing. Therefore,

Payne's habeas claims on these grounds are denied.

**C.**     **Claim Three: Violation of Confrontation Clause at Habitual Offender Hearing**

Relying on the Supreme Court's holding in *Melendez–Diaz v. Mass.*, 557 U.S. 305, 129

S. Ct. 2527, 174 L. Ed.2d 314 (2009), Petitioner argues that his Sixth Amendment Confrontation

Clause right was violated because "the State introduced as evidence against the Petitioner, a

D.O.C. PenPack and sworn affidavit from the custodian of records, Ella Peterson." [doc. # 1-1, p.

12]. Petitioner alleges that he was never given an opportunity to cross examine Ms. Peterson and

that violated his rights under the Confrontation Clause. *Id.*

The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the

right to cross-examine the witnesses against him and bars the admission of testimonial hearsay.

*Crawford*, 541 U.S. at 59. In *Melendez–Diaz* a prosecutor sought to admit "certificates of

analysis" that showed that a substance found in the defendant's possession was cocaine.

*Melendez–Diaz v. Mass.*, 557 U.S. 305, 308, 129 S. Ct. 2527, 174 L. Ed.2d 314 (2009). The

certificates were sworn to by analysts at a state laboratory. *Id.* The trial court allowed the

certificates, even though the forensic analysts who tested the substance did not testify. *Id.* at 309,

129 S.Ct. 2527. The Supreme Court held that the admission of certificates of analysis violated

the Confrontation Clause because they fell into the "core class of testimonial statements"

identified in *Crawford*. *Melendez–Diaz*, 557 U.S. at 310, 129 S.Ct. 2527 (quoting *Crawford*, 541

U.S. at 51). The State's failure to produce the expert witnesses for cross-examination constituted

a violation of defendant's right of confrontation. *Id.*

In drawing a connection between the affidavits at issue in *Melendez–Diaz*, and the

affidavits at issue here certifying the documents provided were accurate copies of the records,

Payne argues that his rights under the Confrontation Clause were violated. [doc. # 1-1, p. 12]. As

the appellate court noted

> LSA–R.S. 15:529.1(F) provides that certain documents "shall be prima facie
> evidence of the imprisonment and of the discharge" of the person charged as a
> multiple offender. These documents include the certificates of the chief officer of
> any state prison or penitentiary, or of the clerk of the court of conviction,
> containing the name of the person imprisoned, the photograph and the fingerprints
> of the person as they appear in his records, a statement of the court of conviction,
> the date and time of sentence, the length of time imprisoned and the date of
> discharge. *State v. Hunt*, 573 So.2d 585 (La. App. 2d Cir. 1991).

*State of Louisiana v. Landford Anthony Payne*, 47,481 (La. App. 2 Cir. 12/12/2012), 108

So.3d 174, 180.

The Second Circuit court went on to state, "unlike the affidavits at issue in

*Melendez–Diaz*, *supra*, the custodian's affidavit in this case did not assess evidence to be used

against the defendant, but merely certified that the documents provided were accurate copies of

the original records of the Department of Public Safety and Corrections regarding the

defendant." *Id.* at 180-81. This court agrees that an affidavit certifying the authenticity of a

record is not testimonial and, accordingly, not subject to the Confrontation Clause."It is the

records, not the certification, that are introduced into substantive evidence against the defendant

during trial." *See United States v. Edwards*, 2012 WL 5522157, at *2 (D. D.C. Nov. 15, 2012).

Even if the affidavit in this case were testimonial, the Petitioner fails to argue and is

unable to establish actual prejudice. During sentencing the court noted that it weighed the factors

of Article 894.1, the pre-sentence investigation report, the case file, and any submissions on

behalf of defendant in determining Petitioner's sentence and status as a habitual offender. [doc. #

10-3, p. 24-28]. For all of these reasons, the undersigned finds that Petitioner's claim of

Confrontation Clause violation at habitual offender hearing lacks merit.

D.      **Claim Four: Ineffective Assistance of Trial counsel**

Petitioner alleges several grounds for ineffective assistance of trial counsel: 1) trial

counsel failed to investigate the crime to support defense theory; 2) trial counsel failed to consult

adequately with the Petitioner prior to trial; 3) trial counsel failed to interview State's witnesses

prior to trial; 4) trial counsel failed to impeach State's witness, Jerry Lee Greer; and 5) trial

counsel failed to conduct any pretrial investigation. [doc. # 1-1, p. 13].

The Sixth Amendment to the United States Constitution guarantees that in all criminal

prosecutions, the accused has the right to the assistance of counsel for his defense. U.S. Const.

art. VI. To merit relief pursuant to § 2255 on a claim of ineffective assistance of counsel, a

petitioner must demonstrate that his trial counsel's performance fell below an objective standard

of reasonableness and that this deficient performance prejudiced his defense. *Strickland v.

Washington*, 466 U.S. 668, 691 (1984). The two-part *Strickland* test applies to challenges to

guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.

Ct. 366, 88 L. Ed. 2d 203 (1985). In assessing whether a particular counsel's performance was

constitutionally deficient, courts indulge a strong presumption that counsel's conduct falls within

the wide range of reasonable assistance. *Strickland*, 466 U.S. at 689. "A fair assessment of

attorney performance requires that every effort be made to eliminate the distorting effects of

hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the

conduct from counsel's perspective at the time." *Id.* at 691. To prevail on the deficiency component of this test, a petitioner must identify the acts or omissions that were not the result of reasonable professional judgment. *Strickland*, 466 U.S. at 690.

The second, or "prejudice," requirement focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 58–59. A court need not address both components if the movant makes an insufficient showing on one. *Strickland*, 466 U.S. at 691.

i.    Failure to Fully Investigate

Petitioner contends that his trial counsel failed to do an independent investigation of the crime scene. [doc. # 1-1, p. 14]. Petitioner claims that his counsel failed to locate Paul Brown whose testimony would have contradicted Jason Weeks' testimony. *Id.* at 18.

"[A]n attorney must engage in a reasonable amount of pretrial investigation and 'at a minimum, . . . interview potential witnesses and . . . make an independent investigation of the facts and circumstances in the case." *Bryant v. Scott*, 28 F.3d 1411, 1415 (5th Cir. 1994) (citing *Nealy v. Cabana*, 764 F.2d 1173, 1177 (5th Cir. 1985)). "[C]ounsel's investigation does not have to uncover every conceivable fact to be reasonable." *Williams v. Stephens*, 575 Fed. App'x 380, 385 (5th Cir. 2014) (citation omitted). When assessing the reasonableness of an attorney's investigation, a court must "consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005) (quoting *Wiggins v. Smith*, 539 U.S.

14

510, 521 (2003)). A petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial. *Id.* at 361.

Here, Petitioner believes that if his trial counsel had conducted an additional investigation of the crime scene she would have uncovered that the residence was abandoned. [doc. # 1-1, p. 17]. Petitioner alleges that "if trial counsel would have interviewed the owners and secured their testimony for trial purpose, the outcome would have been different because, the owners of the abandoned structure testimony would have highly contradicted Jason Weeks testimony by perjuring him in front the factfinders and weakening the State's case against the Petitioner." *Id.* at 17-18.

However, Petitioner does not explain why it is material the crime scene took place at an abandoned building and why that information would have changed the results of the trial. Further, Petitioner fails to state why that information would cause a fact finder to question the overall credibility of Weeks' testimony. "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981) (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)). He has failed to provide any proof whatsoever showing that the homeowner was available to testify at trial, that the homeowner would have testified, and that the testimony would have been favorable to his defense.

The Fifth Circuit has held that, when a Petitioner finds fault with his attorney's failure to investigate his case properly, he must "allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Goodley*, 183

15

Fed. App'x 419, 422-23 (5th Cir. 2006) (quoting *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)); *see also Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998). This Payne has not done.

Additionally, Petitioner cannot demonstrate that he was prejudiced by his attorney's alleged deficiencies or that the outcome of the trial would have been different. As the Second Circuit Court of Appeal noted:

> The evidence presented at trial against the defendant was strong, considering that both victims positively identified defendant as the person who demanded their money while armed with a handgun and who shot them at close range. In addition, defendant was arrested with a handgun that was determined to have fired the shell casings found at the scene of each shooting. The trial transcript demonstrates that defendant's attorney thoroughly cross-examined each of the state's witnesses and was able to highlight for the jury the inconsistencies in their testimony. Based on the defense attorney's performance during the trial, after which the jury acquitted defendant of the armed robbery of Weeks and found him guilty of the lesser offense of attempted armed robbery of Greer, the record does not show a lack of trial preparation. Despite defendant's assertion that his trial attorney should have located the owner of the house where Weeks was shot, there is no explanation as to how that information would have negated the evidence that defendant was the shooter.

*Payne*, 108 So. 3d at 182.

The Court cannot conclude, from Petitioner's speculative and unsupported claim, that counsel was ineffective in choosing not to interview the homeowner of the abandoned structure.

ii.     Failure to Adequately Consult with Client

Petitioner next contends that trial counsel "failed to consult adequately with [him] prior to trial," because she only visited him three times at the Ouachita Parish Correctional Center. [doc. # 1-1, p. 19]. Petitioner argues that "(1) if trial counsel's consultation would have been adequate, the Petitioner would have made a better informed decision on whether to proceed to trial or not, and (2) the investigation into the purchase of the gun [used in the commission of the

16

offense] would have given the Petitioner another witness to call on his behalf to contradict Jason Weeks' testimony." *Id.* at 20.

Payne alleges that his trial attorney spoke with him on only three occasions. However, brevity of consultation time between a defendant and his counsel, alone, cannot support a claim of ineffective assistance of counsel. *Jones v. Wainwright*, 604 F.2d 414, 416 (5th Cir. 1979) ("Our standard requires not perfect but reasonably effective assistance, . . . which may be provided even if counsel spends only a short time with his client."). The court finds that Payne's claim as to his trial attorney's failure to adequately consult with him is without merit.

Petitioner's claim of failure to investigate the purchase of the gun fails for the same reasons as Petitioner's earlier failure to investigate claims. Petitioner does not explain why the purchase of the gun was material and why that information would have changed the results of the trial. Petitioner fails to state what part of Jason Weeks testimony would be contradicted and why that information would cause a fact finder to question the credibility of his testimony. Petitioner argues that an investigation would have "given the Petitioner another witness to call on his behalf to contradict Jason Weeks' testimony." [doc. # 1-1, p. 20]. "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Boyd*, 661 F.2d at 390. Petitioner's has failed to allege sufficient facts to warrant a finding that counsel was ineffective for failing to investigate.

### iii.    Failure to Interview State's Witness Prior to Trial

Petitioner next claims that his trial counsel failed to interview Jason Weeks before trial. [doc. # 1-1, p. 21]. Petitioner's only evidence to support his claim is that his trial counsel's cross-

examination of Jason Weeks was deficient. *Id.* at 22. A habeas petitioner has the burden to prove

that he is entitled to relief. *Orman v. Cain*, 228 F.3d 616, 619 (5th Cir. 2000) (citing *Williams v.*

*Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 1518, 146 L. Ed. 2d 389 (2000) and *Engle v. Isaac*, 456

U.S. 107, 134–35, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982)).

Moreover, Petitioner has failed to provide any evidence which would cause this Court to

conclude that there is a reasonable probability that, absent his counsel's alleged errors, the result

of the proceedings would have been different. Petitioner claims that interviewing Jason Weeks

would have resulted in information that "would have assassinated" his credibility. [doc. # 1-1, p.

23]. Even if Petitioner's claim is accurate, that the jury would disregard Weeks' testimony, he is

still unable to show prejudice. As the Second Circuit Court noted above, the case against

Petitioner was strong. *See Payne*, 108 So.3d at 182. Petitioner has failed to demonstrate that but

for counsel's failure to interview Weeks, there is a reasonable probability that this appeal would

have resulted in the reversal of his convictions.

iv.     Failure to Properly Impeach State's Witness

Petitioner argues that counsel was ineffective for failing to inform the jury of witness

Jerry Greer's criminal history. [doc. # 1-1, p. 25]. He contends that counsel should have

impeached Greer and challenged the veracity of his testimony. *Id.*

Upon review, however, Petitioner fails to show that counsel's decision not to impeach the

witness was not part of a reasonable trial strategy. As the Supreme Court explained in *Strickland*:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too
> tempting for a defendant to second-guess counsel's assistance after conviction or
> adverse sentence, and it is all too easy for a court, examining counsel's defense
> after it has proved unsuccessful, to conclude that a particular act or omission of
> counsel was unreasonable.

*Strickland*, 466 U.S. at 689. Here, the Court declines to second-guess counsel's decision, and ultimately finds that Petitioner has failed to establish the deficiency prong of *Strickland*. Counsel's failure to present evidence of the witnesses's alleged felony conviction hardly amounts to "error[ ] so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

In addition, even assuming that counsel was deficient, Petitioner fails to show that he suffered prejudice. Petitioner does not explain how the presentation of any alleged criminal history would have undercut the substance of Greer's testimony. After Greer was shot, a neighbor heard the gun shot and followed Petitioner. *See Payne*, 108 So.3d at 178. Three individuals actually saw Payne fire the gun and seven others heard the shot or saw Payne with a gun in his hand prior to the shooting. *Id.* The handgun in Payne's possession when he was arrested was determined to be the weapon that fired the cartridge casings found at the scene of the shooting. *Id.* In light of these facts, there is no reasonable probability that, but for counsel's failure to show Greer's criminal history, the result of the proceeding would have been different. This claim is without merit.

The totality of the representation that counsel provided was well-within an objective standard of reasonableness. Moreover, there is no reason to believe that Petitioner was prejudiced due to counsel's failure to impeach witness Greer.

v.     Failure to Conduct Any Pre-Trial Investigation

In Petitioner's last claim for ineffective assistance of counsel, he merely repeats and rehashes the same arguments made in his previous claims for ineffective assistance of counsel. Petitioner again asserts that (1) his trial counsel failed to properly investigate the true owner of

the abandoned building where one crime took place and (2) failed to investigate the criminal history of Jerry Greer for perjury purposes. [doc. # 1-1, p. 32]. For the reasons discussed in Section II.D.i-iv, Petitioner's previous claims for ineffective assistance of counsel are without merit.

Petitioner also contends that "[t]rial counsel further abdicated her responsibility to advocate her clients cause by failing to test the gun powder residue kit, that was done on her client by the Monroe Police Department." *Id.* at 29. Additionally, "[i]t is clear from the record inside this instant case that the trial counsel for the Petitioner restricted her pretrial investigation to review of the Bill of Information against her client, and examination of the prosecutor's file." *Id.* at 30.

A petitioner such as Payne "who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir.1989) (citing *Alexander v. McCotter*, 775 F.2d 595 (5th Cir. 1985)). Because Payne did not provide sufficient detail about what the investigation might have revealed or how it might have altered the outcome of his trial, he has failed to show that this foregone investigation met the performance component of the *Strickland* test. These conclusory assertions does not warrant relief. *See Uresti v. Lynaugh*, 821 F.2d 1099, 1103 (5th Cir. 1987) (holding that a habeas petitioner has the burden of proving facts in support of his or her claim and unsupported, conclusory allegations do not warrant habeas relief).

To the extent Petitioner asserts that his trial counsel's performance was deficient for failure to test the gun powder residue kit, this decision is a matter of trial strategy. It is well

20

settled that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks and citation omitted). The trial strategy that defense counsel employed regarding whether to test the gun powder residue kit could very well have been a calculated trial tactic designed to allow as much reasonable doubt to remain in Petitioner's favor, due to the fact that "the Monroe Police department didn't conduct the analysis of the gun powder residue test." [*See* doc. # 1-1, p. 29].

Furthermore, Payne has failed to show a reasonable probability that but for his trial counsel's failure to conduct a pretrial investigation he would have been found not guilty. Accordingly, Petitioner's claims for ineffective assistance of counsel should be DENIED.

**E.      Claim Five: Perjury by State's Witness Jason Weeks**

Petitioner contends that State's witness Jason Weeks committed perjury in regard to his reason for visiting the crime scene on the date of the offense. [doc. # 1-1, p. 35]. However Petitioner has not shown that there is a reasonable probability that the verdict might have been different had the trial been properly conducted. *Rogers v. Lynaugh*, 848 F.2d 606, 609 (5th Cir. 1988). As mentioned above, the case against Petitioner was strong. *See Payne*, 108 So.3d at 182. Petitioner has not demonstrated that the fact finder would have disregarded Weeks' testimony due to his true motivations for being at the residence where he was shot. Petitioner has not shown that the result of the proceeding would have been different. Thus, this claim is without merit.

**F.      Claim Six: Prosecutorial Misconduct**

In Petitioner's final claim, he asserts that the prosecution actively participated in misleading the jury with misrepresentation of facts surrounding the crime. Petitioner asserts that Jason Weeks' testimony that he was at the crime scene in order to meet up with Paul Brown who lived at the residence was fabricated because Petitioner claims nobody lived at the abandoned structure. [doc. # 1-1, p. 37].

While the State may "prosecute with earnestness and vigor" it still must "refrain from improper methods calculated to produce a wrongful conviction . . . ." *United States v. Young*, 470 U.S. 1, 7 (1985) (quotation omitted). "It is well settled that the State is not permitted to present false evidence or allow the presentation of false evidence to go uncorrected." *Moody v. Johnson*, 139 F.3d 477, 484 (5th Cir. 1998). "To establish a due process violation based on the government's use of false or misleading testimony, a petitioner must show (1) that the witness's testimony was actually false, (2) that the testimony was material, and (3) that the prosecution knew the witness's testimony was false." *Fuller v. Johnson*, 114 F.3d 491, 496 (5th Cir. 1997).

However, Petitioner has failed to establish that Weeks' testimony concerning his motivation for being at the crime scene was false. Petitioner merely suggests that Weeks' testimony was untruthful because Weeks was involved in criminal activity at the residence, an assertion he is unable to support with any evidence. [doc. # 1-1, p. 39]. The State notes that the prosecution did not try to purposefully hide Mr. Weeks criminal history and even mentioned his criminal history during opening and closing statements. [doc. # 10, p. 18].

Additionally, Petitioner has failed to show that the admission of Mr. Weeks testimony concerning his reason for being at the crime scene materially weaken the prosecution's case. As explained above, the prosecution's case was strong even without Mr. Week's testimony. Given

22

"the overwhelming quantity and quality of the other evidence in the record supporting the jury's verdict," *United States v. Washington*, 44 F.3d 1271, 1282 (5th Cir. 1995), the Court concludes that Payne fails to meet the false-evidence materiality standard regarding the prosecution's use of evidence concerning Mr. Weeks' reason for being at the crime scene. Accordingly, this claim should be DENIED.

<u>Conclusion</u>

For the reasons stated above, **IT IS RECOMMENDED** that the Petition for writ of *habeas corpus* filed by Petitioner Lanford Anthony Payne, [doc. # 1], be **DENIED and DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. § 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

In Chambers, Monroe, Louisiana, this 27th day of May, 2016.

**KAREN L. HAYES**
**UNITED STATES MAGISTRATE JUDGE**

24